**Carl P. SPARANO, Plaintiff,**

v.

**SECRETARY OF the ARMY, and The United States of America, Defendants.**

**No. Civ. 81–1833.***

United States District Court, D. New Jersey.

May 26, 1982.

---

* Affirmed, 709 F.2d 1495 (CA–3, 1983); cert. den. —— U.S. ——, 78 L.Ed.2d 111, 104 S.Ct. 109 (1983).

James B. Smith, Metuchen, N.J., for plaintiff.

W. Hunt Dumont, U.S. Atty. by Louis J. Bizzarri, Asst. U.S. Atty., Newark, N.J., for defendants.

## MEMORANDUM

BIUNNO, Senior District Judge.

This is a review of a decision by the Army Board For Correction of Military Records. (Board). The jurisdiction of the District Court to review a Military Board has been clearly established within this circuit *Ragoni v. U.S.*, 424 F.2d 261, 263 (CA3, 1970), *Neal v. Sec of Navy*, 639 F.2d 1029 (CA3, 1981).

■ The review is limited to a review of the record before the Board to determine whether there was substantial evidence to support the findings of the Board. The court is not to make evidentiary findings of its own *Neal*, supra.

■ The petitioner was an officer in the United States Army Reserve. He obtained the rank of Captain January 18, 1968. He served as Finance Officer of 78th Training Division, Army Ready Reserve.

At the time of his promotion in 1968 the Army required that a Captain complete at least 50% of his Officer Advance Courses in order to be eligible for promotion to the rank of Major, AR 135–55. This regulation was changed in 1969 to require that 100% of the Officer Advance Courses be completed in order to be eligible for promotion to Major. In the absence of a vacancy, a Captain cannot advance to Major until the completion of seven years service as Captain, and is automatically considered for promotion at that time, AR 135–155 (Oct. 1969).

In 1972 petitioner encountered disagreement with the commanding general of the 78th Division due to the fact that petitioner wore a wig to conceal his baldness. He could not resolve this with his commanding officer, so at his own request he transferred to a Reserve Control Group in January, 1973 (Ex A pg 18). Petitioner remained with this unit until October 1, 1974 when he transferred back to the 78th Training Division (after a new commanding general took office).

While petitioner was still in the Control Group in April of 1974, he first became eligible for consideration for promotion to Major. In 1974 the Army changed its dates when promotion boards would be scheduled to meet. The meetings had usually been held in September. Possibly because of the Federal fiscal year change, the meeting date of the promotion board was moved from September, 1974 to April, 1974. However, the education requirement

was allowed to be completed by September, 1974 so as not to prejudice anyone due to the change that transition year. The petitioner was notified of his consideration and of the changes by letters to his home on December 13, 1973 (Ex C pg 27) and February 18, 1974 (Ex C pg 28).

The petitioner failed to complete his educational requirements by the September date and on October 21, 1974 (Ex C pg 29) he was notified of his being passed over for promotion. This letter also informed the petitioner that he would be considered by the next board that met, that meeting the education requirement was mandatory, and if the next promotion board failed to select him he would be discharged from the Army Reserve.

On petitioner's return to the 78th Training Division in October, 1974 he had spoken with Warrant Officer Francis T. Dreher (Ex C pg 31) in regard to his eligibility for promotion. He was advised that "if USAR promotion boards were handled in 1975 as they were in 1974", he would have until at least September, 1975 to complete his educational requirements. In December, 1974 through IA Cir 135-23 (Ex C pg 35) the 78th Division was informed that the promotion board for Major was to meet in April of 1975. In February, 1975 Warrant Officer Dreher informed petitioner the promotion boards would not be handled as they were the previous year and that his educational material must be completed by April.

At this point petitioner made an effort to complete his education by getting bulk courses from the correspondence school conducting the courses (USAIA). The petitioner was unable to get everything he needed due to an administrative conversion of the school to a computer system. When the promotion board met in April of 1975, petitioner once again was not promoted for failure to complete his educational requirements, and was retired from the Army Reserve.

On appeal to the Board, the denial of his promotion was upheld because petitioner simply waited too long to complete his edu-

cation. Thus no injustice occurred to the petitioner.

The petitioner argues that several events worked together to prevent him from completing his educational requirements; that since these events were not of his own making, there is an injustice that the Board could have corrected. Thus, he says, this court should find that there is no substantial evidence to support the Board holding that no injustice occurred to petitioner.

The first event complained of is that petitioner's transfer from the 78th Training Division to the Reserve Control Group took petitioner out of touch with Army affairs. Thus he was unaware of the change in requirements for promotion from 50% to 100% of the educational courses.

This allegation is simply not true. The petitioner voluntarily transferred to the Control Group in January, 1973. The change in regulations that petitioner claims he would not know of because of being in the Control Group occurred in October, 1969 while the petitioner was still in the 78th Training Division. Thus petitioner should have known as early as 1969 that he had to complete 100% of the educational requirements for Major. At this time he still had six years to complete the courses.

The next event the petitioner complains of is that the Army failed to inform him of his selection for Major by the April, 1974 promotion board, provided he completed his courses by September, 1974. This argument is an attempt to turn the court's attention away from petitioner's own neglect during that period. The petitioner was informed in December of 1973 of his consideration, and he knew he had to complete his education by September, yet he did not do so.

As an officer the petitioner knew he would only be considered twice for promotion, and if he were twice denied he would be forced out of the Army. It is hard to believe that an officer who is under consideration for promotion would not make every effort to meet the requirements by the time the promotion board met. He cannot now blame the Army for not specifically

informing him of his conditional selection, when he had 9 months notice that the Army expected that Captains eligible for promotion to Major should have their courses completed by September, 1974.

Further, petitioner could have obtained notice of his selection if he was truly interested. The results of the April, 1974 Board were published in AR 624–2 (Ex C pg 37). Since an officer is to be aware of all such publications, the petitioner is held to have had actual notice of his selection.

The petitioner next argues that he was misinformed as to the date he had to complete his education by Warrant Officer Dreher. This is simply a misinterpretation by petitioner of what he was told. Petitioner was told that *"if"* the April, 1975 promotion board was run as the April, 1974 board had been, he would have until September, 1975 to complete his courses. That petitioner took this to mean he need not complete his courses until September, 1975 is not the Army's fault. Petitioner could have investigated the matter on his own, rather than do nothing until it was too late.

The petitioner's final complaint stems from the temporary closing of the Army Correspondence School on February, 1975. Petitioner claims that he discovered that he had to complete his education by April 1975 in February, 1975 and made every attempt to get the courses needed (Ex C pg 40). Although the school kept telling students it would be able to furnish the needed material it could not and in petitioner's case, it did not.

There is no doubt that had the school not closed down, petitioner would have had time to complete his courses. But this was not an injustice as the petitioner claims. Rather any harm that the closing caused petitioner was caused by petitioner's own delays in earlier years especially since he knew he had been passed over in 1974, and knew he had not finished his courses.

The petitioner had from 1968 to work on his educational requirements. Yet by his own admission he waited until he had only 2 months left to complete the final 20% of his courses. He cannot now blame the Army because his need coincided with the same two months when the school was closed. Petitioner chose to do the final 20% of the work when he had more than seven years to complete it. Had petitioner shown a bit more diligence earlier in that period he would not have found himself in the situation he was upon the closing of the school.

In any event, these arguments go to a matter of discretion, the authority to exercise which is in the Board, not in the court. The facts clearly show that there was substantial evidence to support the Board in exercising its discretion in the way it did, and even if this court were of a view that it should have been exercised the other way, which it is not, it could not set aside the result below.

Accordingly, it is found that there is substantial evidence in the record to support the holding of the Board that "he simply waited too long to make an effort to complete the requirements".